## MORRIS SCHLOSS v. HIS CREDITORS.

EVIDENCE AND PROOF.—Evidence includes the means by which any alleged matter of fact is established or disproved.  Proof is the result or effect of the evidence.

MAKING PROOF.—As a general rule, where proof of a fact is required by a statute, and the nature or character of the evidence for the purpose is not specified, the only mode of making the proof is that prescribed by the common law rules of evidence.

PROOF OF PUBLICATION OF NOTICE TO CREDITORS.—One of the exceptions to this rule is the proof of the publication of the notice to creditors in insolvent proceedings.  The publication of such notice may be proved by affidavit.

LOSSES BY AN ALLEGED INSOLVENT.—Where the petition of an alleged insolvent states losses sustained by him in trade, and he fails, when made a witness on the stand, to explain how the alleged losses occurred, the inference is that the estimate of losses was not honestly made.

ACCOUNT BOOKS OF AN ALLEGED INSOLVENT.—It is the duty of an alleged insolvent, on or before the day appointed for the meeting of creditors, to deposit in the Clerk's office, for the inspection of his creditors, all the commercial or other books which he may have kept; and his failure to do so, or account for their loss, is *prima facie* evidence of fraud to the injury of his creditors.

QUESTION OF LAW IN AN INSOLVENT CASE.—Whether one claiming a discharge under the Insolvent Act, has strictly complied with its provisions, is a question of law for the Court, and not one of fact for the jury.

APPEAL from the County Court, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*G. F. & W. H. Sharp*, for Appellant, argued that the Court erred in admitting in evidence the affidavit of publication of notice to creditors, and that the only way in which publication of the notice could be proved was by producing the printer and his newspaper on the trial, as the term " proof " had a well settled and definite meaning at common law, and presupposed the introduction of evidence; and cited 1 Green. on Ev., Sec. 1; *Gass* v. *Stinson*, 3 Sumner, 98; and *Meir* v. *Colledge*, 8 Barb. 79.  They also argued that section twenty-one of the Act concerning insolvents, which made it necessary for the Court to require proof of the publication of the notice, being in derogation of the common law, must be strictly construed, and that whenever the Legislature used a term known

26

to the common law, leaving it undefined, it must be understood as used in its common law meaning; and cited *McCaul* v. *Smith*, 1 Black. U. S. 468; *Taffan* v. *Bellows*, 1 New Hamp. 107; and 11 Peters, 545. They also argued that the failure of the petitioner to produce his books or account for their loss was *prima facie* evidence of fraud.

*Theodore H. Hittell*, for Respondent, argued that if the petitioner kept any book which was not produced, its absence was sufficiently accounted for, and that he had sufficiently accounted for his losses. He also argued that the phrase " proofs and allegations of the parties " had a well settled common law meaning, and that the twenty-first section of the Insolvent Law did not use the phrase " proof of publication " in the same sense, as it made it the duty of Court to require proof of publication before any other proceedings were had, and this proof was preliminary matter, to be directed to the Court alone, and preceded the trial; and cited *Bagley* v. *Eaton*, 10 Cal. 126.

By the Court, CURREY, C. J.:

The petition of Schloss was in due form. To it was annexed the schedule required by the third section of the Act for the relief of insolvent debtors and protection of creditors, and thereupon the Judge of the Court in which the proceeding was instituted made an order requiring the creditors to show cause, if they could do so, at a particular time and place, why the prayer of the insolvent debtor should not be granted, and an assignment of his estate be made, and he be discharged from his debts. At the time appointed, several of the petitioner's creditors appeared and laid before the Court their written opposition, alleging various acts of fraud against the petitioner by reason of which they prayed the Court that the application of the petitioner might be dismissed and that he might be forever debarred the benefit of the law referred to. The petitioner answered, controverting the charges of fraud.

The issue thus joined was afterward tried before a jury who rendered a verdict in the petitioner's favor, upon which judgment was entered. The opposing creditors moved for a new trial, which was denied, and in due time appealed from both the judgment and order.

### Notice to creditors.

I. At the trial the petitioner offered in evidence his petition and schedule and the order of the Judge for the publication of the notice to creditors, and such notice, with an affidavit of its publication. The counsel for the opposing creditors objected to this affidavit as evidence on the grounds: First, that the statute does not make such affidavit evidence; and second, that the same is not the best evidence. The Court overruled the objection, to which ruling an exception was taken. Thereupon the evidence offered was admitted.

The Act requires that before any other proceeding shall be had upon the trial of an issue of the kind joined between the opposing creditors and the debtor claiming to be insolvent and seeking a discharge from his debts, the Court shall require proof of the publication of the notice to creditors (Sec. 2); but the statute does not provide what shall constitute proof of publication of the notice, nor how the proof shall be made.

### Evidence and proof.

There is an obvious difference between the words evidence and proof. The former, in legal acceptation, includes the means by which any alleged matter of fact, the truth of which is submitted to investigation, is established or disproved. The latter is the effect or result of evidence. (1 Greenl. Ev., Sec. 1.) These words are often used indifferently as expressive of the same thing, and in this case it may not be important to observe the distinction between them. As a general rule, where proof of a fact is required by a statute, and the nature or character of the evidence for the purpose is not specified, the only mode of making the proof is that prescribed

by the common law rules of evidence. Departures from a strict observance of these rules have been sanctioned in some instances on the ground of necessity, and in others, not involving particularly the real subject of controversy, but matters which are auxiliary to the trial of the cause, and are addressed to the Court, on the ground of convenience. Thus applications for a continuance on the ground of a party's inability to procure the attendance of a witness or to obtain some necessary evidence, or to establish the loss of a written instrument, and the like, are in practice generally founded upon affidavits, and the service of notices and subpœnas and matters of the kind, when required to be established, are usually proved by affidavits. The proof of the publication of the notice to creditors was a matter preliminary to the trial of the issue joined, and was solely for the consideration of the Court, that the Court might thereby become judicially informed that all the creditors of the insolvent had been brought within its jurisdiction by the due publication of the notice or summons required by the eighth section of the statute, and had their day in Court. We are of the opinion the Court ruled correctly upon this point.

II. The opposing creditors charged in the written opposition by them filed and submitted to the Court that the items of losses in the petitioner's schedule were simulated and untrue, and were fraudulently inserted therein ; and they also charged that he had failed and refused, with intent to defraud his creditors, to deliver his commercial papers and books to the Court, as required to do by the statute, but on the contrary had concealed the same with like intent. The counsel for the opposing creditors moved for a new trial on the ground, among other causes, that the evidence did not authorize the verdict rendered and assigned particularly that the evidence did not show the petitioner to have suffered the losses set forth in his schedule, but the contrary ; and further, that it did not appear that he had surrendered all his commercial books, but the contrary.

*Losses and books of account of insolvent.*

The transcript of the record before us contains all the evidence produced on the trial.   From the evidence it appeared that the petitioner had been engaged in a retail·mercantile business during the year 1860, and since then in the City of San Francisco.   His schedule sets forth that he sustained losses on depreciation of the value of merchandise in the sum of one thousand eight hundred dollars, and that he had lost on mining stocks in 1860 and 1863 one thousand two hundred dollars, and had paid interest to the amount of seven hundred and twenty-five dollars, and that his expenses for rent and for himself and family had amounted to twenty-two thousand dollars.   The petitioner was examined before the jury, and testified that in December, 1864, he took an account of stock and then estimated its depreciation in value at five hundred dollars or one thousand dollars, and that in making up his schedule of losses he estimated the loss by depreciation in the value of his stock in 1864 at one thousand dollars, and at eight hundred dollars from the 1st of January, 1865, to the time of his failure in August of the same year; but he also said, taking his stock as a whole, there was no depreciation in its value. It is impossible to reconcile the testimony of the petitioner in reference to the value of his stock in trade with his statement contained in his schedule of loss by a depreciation in its value. Whether the estimated depreciation stated in the schedule to have been suffered was honestly made, we have no certain means of ascertaining; but the petitioner had it in his power while on the stand as a witness to explain the matter if it could be explained, but he chose not to do so, and we can only conclude from the falsity of the estimate that it was not honestly made.   In respect to the loss sustained by the payment of interest, the petitioner did not undertake to give any explanation, but so testified as to warrant the conclusion that he paid no interest either in the year 1864 or 1865.   He testified that he made up a list of his losses from his ledger, (which is designated in the statement on motion for new trial as Book

H,) which was opened in January, 1865, and in which he kept only an account of his purchases of and payments to merchants, and from his old books, a part of which, he says, was carried into Book H. He further testified that in 1864 he kept a book similar to Book H, but that at the time of the trial he did not know where it was. And further, he said that he did not see his books, which were all in the store, so far as he knew, from the time he was attached on the 15th of August, until after he had filed his petition in insolvency, and the opposing creditors' attorney demanded their production in open Court, when the notice to creditors was returnable on the 9th of October. The seventh section of the Act provides that the insolvent shall, either before or on the day appointed for the meeting of the creditors, deliver to the Court all the commercial and other books he may have kept, which books shall be deposited in the Clerk's office of the Court. The creditors have a right to the inspection of the insolvent's books, and if they are lost or destroyed, so that a delivery of them is impossible, that fact should be made manifest before the omission to deliver them as required should be excused. The statement of the petitioner's affairs and the list of losses which he had sustained covered the period during which he was in business as a merchant in the City of San Francisco, commencing in 1860, and continuing down to the time of filing his petition in September, 1865. During this period he kept commercial books of some kind, and it was his duty to deliver them to the Court as the statute requires, or to show cause why he did not. His statement as a witness on the stand that he did not see his books, which were in his store so far as he knew, from the 15th of August until they were demanded by the counsel for the opposing creditors, and that he then went to his store and searched for them, and found only a part of them, does not show such diligence and desire to obtain the wanted books as is necessary to establish their loss. In the sense of the law such unexplained omission to produce the books must be set down as a concealment of them for the advantage of the petitioner and correspondingly to the fraud

and injury of his creditors. In our judgment the verdict was contrary to the evidence and should have been set aside on the motion for a new trial.

### Question of law for Court.

III. When the testimony was closed the opposing creditors asked the Court to charge the jury that a party who seeks the benefit of the Insolvent Act must strictly comply with its provisions. The Court refused so to charge, and there was an exception taken to the decision of the Court.

This requested instruction is without doubt correct law, but it was a matter of law for the Court rather than for the jury. The duty of the jury was to decide what was the truth respecting the facts in issue between the parties, and they were in duty bound to say by their verdict whether the charge of fraud was well founded or the contrary, and that was all. We think there was no error in the refusal of the requested instruction.

The judgment is reversed and the cause remanded for a new trial.