## CHARLES L. WILSON v. HIS CREDITORS.

PETITION IN INSOLVENCY.—A petition in insolvency may be addressed to the Court, or the Judge thereof, and may be entitled as being in the ·matter of the application of the insolvent to be discharged from his debts, though not necessarily so. It may be brief and refer to the schedule.

IDEM.—If the insolvent wishes to be discharged from debts not described, or imperfectly described in his schedule, he must so state in his petition.

IDEM.—The insolvent need not sign his petition, nor is it indispensable that it be signed by his attorney, but the insolvent must sign personally at the foot of the schedule.

IDEM.—The petition and schedule constitute one paper, and constitute the complaint.

IDEM.—The schedule of an insolvent must be verified, but the petition need not be verified.

SCHEDULE OF INSOLVENT.—The schedule of an insolvent should consist of three parts, and the inventory of his estate should be made as full and complete as possible; but in the enumeration of his losses and debts there is no special reason for much exactness or detail.

OPPOSITION TO DISCHARGE OF INSOLVENT.—Creditors may oppose the discharge of an insolvent on two grounds : first, any supposed illegality in the appointment of an assignee ; and second, any supposed fraud committed by him. Opposition on the first ground raises an issue of law as to the validity of all the previous proceedings ; on the second, an issue of fact.

PLEA TO CHARGE OF FRAUD.—To the charge of fraud the insolvent may demur, or he may plead guilty or not guilty.

DEFECTIVE SCHEDULE OF INSOLVENT.—If in the opinion of the creditors the schedule of the insolvent is defective, they should reach the defect by making a charge of fraud, and on the trial examine the insolvent on oath, and in that way elicit information as to his affairs, and not by a demurrer.

STATEMENT OF INSOLVENT'S LOSSES.—A summary statement of the insolvent's affairs and a list of his losses may be inserted in his petition instead of his schedule.

IDEM.—If the insolvent's statement of his affairs and list of losses and estate is meagre in detail, the defect cannot be reached by an objection to the same as to matter of substance.

APPEAL from the County Court, Placer County.

The demurrer of the creditor was overruled, and his motion for a rule on the insolvent was denied. The Court discharged the insolvent from his debts, and the creditor appealed. The insolvent was a married man, having several children, and stated the value of his household furniture to be one thousand dollars.

The other facts are stated in the opinion of the Court.

*H. H. Hartley*, for Appellant.

*George Cadwalader*, for Respondent.

By the Court, SANDERSON, J.:

This is a proceeding under the Act for the relief of insolvent debtors and the protection of creditors.

One of the creditors contested the discharge of the insolvent to the extent of filing what purports to be a demurrer to the petition and schedule, and also a motion for a rule upon the insolvent to amend his schedule and make the same more definite and certain in respect to his losses, his estate and his debts. The demurrer and motion were both filed for the same purpose, and were both resorted to, as stated by counsel, to meet a supposed uncertainty as to what is the proper practice in such cases.

The practice to be observed in conducting proceedings under the Insolvent Act, where the discharge of the insolvent is contested, is not very fully prescribed by the Act itself, nor does it seem to have been very definitely settled by the former decisions of this Court. It is important that a uniform mode of procedure should be observed in this class of cases, and we therefore avail ourselves of this opportunity to suggest to some extent what would be in our judgment a proper prac-

tice, without, however, undertaking to say that a different practice might not respond to all the requirements of the statute, or sufficiently meet all the exigencies of a given case.

On the part of the insolvent the proceeding is to be instituted by the filing of a petition and schedule, the latter being annexed or attached to the former. The petition may be addressed indifferently to the Court or the Judge thereof, which has jurisdiction in the premises. (*Brewster* v. *Ludekins*, 19 Cal. 170.) It should be, though, perhaps, not necessarily so, entitled in analogy to proceedings at common law, as in the Court having jurisdiction, and as being in the matter of the application of the insolvent to be discharged from his debts. It must aver that the petitioner is insolvent, that he is a resident of the county in which the proceedings are commenced, and that he has been a resident of the county for six months next preceding the filing of the petition; the nature of the business in which he has been engaged and in which his losses have been incurred; the cause of his losses—as fire, flood, bad debts, fall of stocks, fluctuations in the market, unprofitable contracts, and the like. This part of the petition may be very brief and summary, and refer to the schedule as containing the subject matter more in detail. If the insolvent desires to be discharged from his debts, whether the same be described in his schedule or not, or if so, imperfectly described, he must in addition aver that such is his desire and that he has described all his debts in his schedule to the best of his knowledge and recollection, and that he has described the same as fully as he can according to his knowledge and recollection, concluding with a prayer for leave to make a cession of his estate to some person to be selected by his creditors or appointed by the Court, and that finally he be discharged from all his debts. The petition need not be signed by the insolvent, (*Brewster* v. *Ludekins, supra,*) nor is it indispensable that it should be signed by his attorney. The schedule is annexed, and is a part of the petition, or, in other words, the two are but parts of the same paper, and together constitute what might be called, in analogy to proceedings in civil cases, the pleading or com-

plaint on the part of the insolvent, and a signing at the close of the schedule is all that would seem to be required. The signing at the foot of the schedule, however, must be by the insolvent personally, for in this respect no one can act for him (Sec. 33.)

It was said in *Brewster* v. *Ludekins* that the petition need not be signed by the insolvent but must be verified by him. If by this it was intended to say that the petition, considered as something separate and apart from the schedule, must be verified, we do not find it sustained by any provisions of the statute. The only paper which the insolvent is in terms required to verify is the schedule (Sec. 4.) There seems to be no reason why the petition should be sworn to, for, aside from the mere jurisdictional facts, it is but the shadow of what is contained in the schedule, which is the principal thing in this connection and contains all such matters as are material and bear directly upon the ultimate questions involved.

The schedule should consist of three parts: First—A summary statement of his affairs, with a list of the losses which he has sustained as complete as it can be conveniently made; Second—A list of his debts, to whom due, etc.; and Third—A perfect inventory of all his estate, real, personal and mixed, etc. What each part of the schedule should contain is fully stated in the third and sixth sections of the statute, and a repetition here in detail would not subserve our present purpose. The most material part of the schedule is the inventory of the insolvent's estate, and should be made as full and complete as possible. (Section 6.) As already stated the schedule must be verified before the Judge of the Court in the words of the statute as given in section four. So far as an enumeration of the losses and debts of the insolvent is concerned, there seems to be no special reason for much exactness or detail. As to the former, the principal object would seem to be to show to some extent good faith on the part of the insolvent by showing the reasons why he has become unable to pay his debts; and as to the latter to afford such informa-

52

tion as may be required by the Court, and especially the
assignee in settling the estate, and, in connection with the
inventory of the estate, that the petitioner is in fact insolvent.
But pass these matters. The questions with which we pro-
posed to deal are questions of practice only. Suppose the
schedule is defective or does not, in the opinion of the credit-
ors, come up to the requirements of the statute? How are
they to proceed? It was suggested in *Bennett* v. *His Credit-
ors*, 22 Cal. 42, and in *Grow* v. *His Creditors*, 31 Cal. 328,
that they might proceed by motion for a rule upon the insol-
vent to amend in the particulars desired; but upon further
reflection we are of the opinion that the more regular mode,
and, perhaps, the only proper mode, would be to follow the
course prescribed in the twentieth and twenty-second sections,
which seem to constitute the only proceeding contemplated
by the statute on the part of the creditors, and the only mode
by which they are to be heard. Those sections provide as fol-
lows:

" SEC. 20. That in case after the appointment of said
assignees, any one of the creditors of the insolvent debtor
should deem necessary to oppose it on the ground of some
fraud having been committed by the said insolvent debtor, or
of the appointment not having been legally made, he shall
within ten days next following the appointment of said as-
signees, lay before the Court which has already taken cogni-
zance of the case his written opposition, stating specially the
several facts of nullity of the said appointment, or of fraud by
him alleged against the insolvent debtor, whereupon, in case
of accusation of fraud, after having received the said insolvent
debtor's answer, the Court shall order a jury to be summoned
of not less than six men, to be summoned in the same manner
as juries are summoned in the District Court, for the purpose
of deciding on said accusation."

" SEC. 22. Upon such an accusation of fraud, the creditor
who shall have brought the same shall have the right to inter-
rogate the insolvent debtor on oath, and put to him such

written questions as to the state of his affairs and the several transactions in which he may have been engaged anterior to his failure, as he shall think proper; and the insolvent shall answer, in writing, to the said interrogatories, in a pertinent and distinct manner; and every equivocal answer on his part shall be construed against him."

So the creditors may oppose the discharge upon two grounds: first, any supposed illegality in the appointment of the assignee which would raise an issue of law as to the validity and regularity of all the previous proceedings; and second, any supposed fraud on the part of the insolvent within the meaning of sections twenty-seven to thirty-two, both inclusive, which would raise an issue of fact to be tried by a jury on a plea of not guilty by the insolvent. If the defects complained of under the first head can be cured by amendment the insolvent should be allowed to amend, in analogy to like proceedings in civil cases. To a charge of fraud the insolvent may object, as by demurrer, that the facts stated do not amount to fraud within the meaning of the Act. If overruled, he must plead guilty or not guilty. If the latter, a jury must be called. On the trial the insolvent may be examined on oath in the mode prescribed in section twenty-two, and in that way any information as to his affairs, losses, debts and estate not furnished by his schedule may be elicited. The verdict of the jury should be guilty or not guilty, or if the former, they may be instructed, if desired by the parties, to find the facts specially, which course has obvious advantages in case of further proceedings on appeal.

Such, we think, is the practice contemplated by the statute and the practice which ought to be observed.

The course suggested was not pursued by the contestant in this case with technical exactness. The paper filed by him is in name and form a demurrer to the petition and schedule, such as is used in civil actions, and not a protest or objection to the appointment of the assignee on the ground of any supposed invalidity or irregularity in the previous proceedings.

But as the substance and not the name and form is the thing to be regarded, we hold that the objections to the previous proceedings were taken substantially in conformity with the provisions of the statute.

The first objection is that the schedule does not contain a summary statement of the affairs of the insolvent, accompanied by a list of his losses; and such is the fact. The only matters referred to or treated in the schedule are the estate and debts. Annexed to the petition are two schedules; the first is denominated "Schedule A," which treats of the estate; the second is denominated "Schedule B," and treats of the debts. All that is said upon the subject of losses is found in the petition, and it is claimed on the part of the respondent that what is there said is all that is required, and that it was properly enough said in that place. On the contrary, the appellant contends that the summary statement of the affairs of the insolvent and the list of his losses, required by the statute, must be given in the schedule and not in the petition. This is technically true, as we have already seen, but the reason why such should be the rule, urged by the appellant, is certainly unsound. It is because the schedule has to be sworn to by the insolvent, while the petition does not. That the schedule must be verified by the insolvent is true, but upon an examination of the verification prescribed by the statute it will be found that it contains nothing whatever in terms appliable to the summary statement of the insolvent's affairs or the list of his losses. On the contrary, no reference whatever is made to anything contained in the schedule except the inventory of the estate and the list of debts and such other matters as they may be said to involve. There is nothing, then, left to be said in support of the proposition that the schedule must contain the summary statement of the insolvent's affairs and the list of his losses, except that such is the rule prescribed by the statute. There may be substantial reasons why the summary statement and list of losses should be verified; and had the statute so provided, a *strict compliance with its terms in that respect* would be required, for the proceeding is statutory and special,

and where such is the case relief can be had only by a strict observance of the conditions upon which it is to be granted, (*Bennet's Case, supra,* and *Schloss* v. *His Creditors,* 31 Cal. 201,) but in view of the fact that they are not embraced in the subjects to which the oath of the insolvent applies, there seems to be no substantial reason why their exhibition should be made in the schedule rather than in the petition; and while the former is undoubtedly the more regular and proper place, because the statute has so provided, we hold that the use of the latter is not such an irregularity as to vitiate the proceedings or require a reversal of the final judgment. To hold otherwise would be to stick in the bark. We can see no reason why a summary statement of the insolvent's affairs and a list of his losses, given in his petition instead of his schedule, does not subserve all the ends contemplated by the statute, and if so it is not only a sufficient compliance with its provisions but a strict compliance within the true sense of the rule' already referred to as being applicable to cases of this character.

Nor do we think the objection taken to the statement of affairs and list of losses as to the matter of substance, fatal to the validity of the proceedings. That they might have been fuller and more complete in matter of detail may be true, but *cui bono?* As already stated, the schedule of property and debts are the material parts of the insolvent's exhibits. They are the exhibits in which the creditors are mostly interested. It is from them that the fact of insolvency is to be ascertained, and what proportion of the indebtedness the assets will pay, and how they are to be apportioned. If the creditors have any reason to suppose that the fact of insolvency is simulated and pretended, or that the insolvent has fraudulently misrepresented his affairs in any respect, and for that reason desire to test his discharge in good faith, sections twenty and twenty-two, above quoted, suggest the course to be pursued, and the latter affords ample means for exhausting the information of the insolvent in matters of detail in reference to every branch of his exhibits.

What is here said as to the substance of the statement of affairs and list of losses is also applicable to the objection to the inventory of the insolvent's estate. It consists of only two items. The first is full as to the property referred to. The second relates to household furniture only. It might have gone more into detail and given the exact number of tables, chairs, beds, etc., but in view of the valuation put upon the whole there is no reason to suppose that the insolvent has more furniture than is necessary for family use, or more than the Court would have set apart to him as exempt from execution; and in the absence of a more direct suggestion from the contestant that he had more than the Court would be likely to set apart, we are not disposed to hold that the Court below erred in not ruling the insolvent to a more definite statement.

In view of the very liberal provisions of the twenty-fourth section of the statute we also hold that the objection to the list of debts is not well taken.

Judgment affirmed.